**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:22-cv-00898-ALM** |
| | ) | |
| **ACTIVE NETWORK, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT ACTIVE NETWORK, LLC'S MOTION TO STAY DISCOVERY**

Defendant Active Network, LLC ("Active") files this Motion to Stay Discovery and states as follows:

## I. Basis of Motion to Stay

The Consumer Financial Protection Bureau ("CFPB") brings this case in an ill-conceived attempt to regulate a non-financial product—the sale of a membership program called "Active Advantage"—that is beyond the CFPB's enforcement jurisdiction and, indeed, subject to the jurisdiction of another agency, the Federal Trade Commission ("FTC"). A stay of discovery pending the resolution of Active Network, LLC's Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion to Dismiss") is warranted under these circumstances. The lawsuit is *ultra vires*, time-barred on its face, and brought using a funding mechanism that is contrary to the CFPB's authorizing statute. While discovery stays are not typically entered based solely on the filing of a motion to dismiss, this case presents the proper circumstances justifying a stay because the motion challenges the CFPB's authority to institute this action. Active should not be forced to expend more time and resources defending against a lawsuit with these fundamental defects, all of which ignore Congress's intent in circumscribing the CFPB's power. Active requests the Court

to stay all discovery in this matter pending the resolution of the Motion to Dismiss. Such a stay would not prejudice the CFPB, which has already obtained substantial discovery through its pre-complaint administrative investigation.

## II. Relevant Facts

1. The CFPB has for years obtained substantial discovery in this matter through three Civil Investigative Demands ("CID") issued on February 13, 2019, July 20, 2020, and April 12, 2021. Declaration of Leonard L. Gordon ("Gordon Declaration") ¶ 4, attached hereto as Exhibit A. In connection with those administrative proceedings, Active has produced over 800 documents, proffered written reports, answered interrogatories, and attended investigative hearings during which the CFPB questioned three witnesses on nine expansive topics over the course of several days and over fifteen hours. Gordon Declaration ¶ 5.

2. The CFPB filed the Original Complaint in this action on October 18, 2022. (ECF No. 1.) The First Amended Complaint ("FAC") followed on the same day. (ECF No. 3.)

3. The FAC claims that Active violated sections 1031(a), 1036(a), 1054(a) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a), and 5564(a); the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(b); and Regulation E, 12 C.F.R. § 1005.10(d).

4. The FAC generally alleges that Active used deceptive tactics in promoting and charging for a discount membership program, called "Active Advantage," that is offered to consumers after they have registered online for races or other events. (FAC ¶ 1.)

5. On November 29, 2022, the Court stayed this case pending the United States Supreme Court's resolution of *CFPB v. Community Financial Services Association of America, Ltd.*, No.

22-448 which presented a challenge to the CFPB's funding mechanism under the Appropriations Clause of the U.S. Constitution. (ECF No. 14.)

6. On July 19, 2023, the CFPB filed a motion to modify the stay to allow the agency to issue subpoenas to preserve documents to ten third parties. (ECF No. 15 at 1.) The Court granted the motion on August 10, 2023. (ECF No. 20.)

7. On May 17, 2024, the stay expired following the Supreme Court's ruling in that matter. *See CFPB v. Community Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024). (ECF No. 14.)

8. On June 17, 2024, Active filed the pending Motion to Dismiss. The Motion challenges the CFPB's authority to bring this action, raises statute of limitations defenses that are apparent from public court records and the face of the Complaint, argues that the CFPB has failed to state a claim under the CFPA in light of the ample disclosures made in the membership offer, and contends that the CFPB's funding mechanism contravenes the CFPA and the Supreme Court's decision in *CFPB v. Community Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024).

9. Specifically, the Motion to Dismiss argues that dismissal is warranted for the following reasons:

a. Active is not a "covered person" subject to regulation under the CFPA because the Advantage program at issue in this case is not a financial product, and Active's processing of payments falls under the "merchant exception" to the CFPA. By pursuing a CFPA claim against Active, the CFPB is acting *ultra vires*.

b. The CFPB's power grab is especially needless in light of the fact that negative option programs like Advantage are subject to regulation by the FTC under the Restore Online Shoppers' Confidence Act ("ROSCA").

c. The CFPA claims asserted in the FAC are subject to a three-year statute of limitations which began to accrue in 2016, when public reporting and court records reflected that Active settled lawsuits related to the Advantage program. As well over three years has elapsed before the filing of this lawsuit, the CFPA claims are time-barred.

d. The EFTA claim is likewise time barred. EFTA claims are subject to a one-year statute of limitations which begin to accrue on the date of the alleged EFTA violation—in this case January 2019.

e. The CFPB fails to state a claim under the CFPA because Active provided ample disclosures accompanying its Advantage membership offer. These disclosures make it abundantly clear that the Advantage program is a separate product from event registrations; and the multi-step enrollment process eliminates any potential for confusion about the membership terms. If customers wish to join the Advantage program, they must take three separate actions to authorize enrollment in the trial: they must (1) click a checkbox stating: "I HAVE READ, UNDERSTAND, AND AGREE TO THE ACTIVE ADVANTAGE OFFER AND BILLING TERMS AND AUTHORIZE ACTIVE TO CHARGE THE ANNUAL MEMBERSHIP FEE OF $89.95 TO THE CARD LISTED BELOW ON THE TERMS DESCRIBED ABOVE UNLESS I CANCEL"; (2) verify their email address by typing it in a text box; and (3) only after clicking the checkbox and entering their email addresses, the customer must click an "Accept" button. After accepting or declining to sign up for the Advantage membership, customers advance to the "Confirmation" page.

f. Finally, in bringing this enforcement action against Active, the CFPB relies upon a funding mechanism that, as the Supreme Court has recently held, is constitutional only

so long as the Federal Reserve recognizes a surplus to fund the CFPB. Despite the incontrovertible fact that the Federal Reserve has been operating at a deficit since 2022, the CFPB has continued to receive funding, contrary to its authorizing statute.

10. As of the filing of this Motion to Stay, the CFPB has not yet filed an opposition to the Motion to Dismiss.

11. The parties have conducted a Rule 26(f) conference, but have not yet exchanged initial disclosures or served discovery requests.

## III. Argument and Authorities

"District courts have broad discretion in all discovery matters." *Seiforth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (internal quotation omitted). Exercising this inherent power, the court may "stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). Though "by no means automatic," a stay may be appropriate pending the resolution of a motion to dismiss. *Von Drake v. Nat'l Broadcasting Co., Inc.*, No. 3-04-CV-0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (quoting *Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002)). To determine whether a stay should issue, the court considers: "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Id.* Moreover, "[a] stay of discovery may be appropriate where the disposition of a motion to dismiss 'might preclude the need for the discovery altogether thus saving time and expense.'" *Id.* (quoting *Landry v. Air Line Pilots Ass'n International AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990)).

A stay is necessary in this case because the pending Motion to Dismiss challenges the CFPB's authority to bring this lawsuit and raises several other threshold questions of law that may

be dispositive of this matter, including that the CFPB has no authority to bring the action against Active at all. Judges in this District have repeatedly stayed discovery under similar circumstances, acknowledging that discovery is unwarranted and needlessly burdensome when threshold legal issues presented in a motion to dismiss may dispose of all claims. *See Gardner v. Gary Sinise Found.*, No. 4:23-CV-99-SDJ, 2023 WL 5987397, at *1 (E.D. Tex. June 5, 2023) (staying case where pending motion to dismiss raised threshold legal issues like subject matter jurisdiction, abstention, the effects of an arbitration agreement, res judicata, and collateral estoppel); *Owens v. Transunion, LLC*, Civil Action No. 4:20-cv-665-SDJ-KPJ, 2022 U.S. Dist. LEXIS 227965, at *3-5 (E.D. Tex. May 17, 2022) ("Because resolving the pending motions to dismiss may reduce and/or preclude the need for discovery altogether, the Court finds it appropriate to stay discovery until the pending motions to dismiss are resolved."); Order at 2, *Bracken v. G6 Hospitality Corp.*, Civil Action No. 4:14-cv-00644-ALM-CAN (E.D. Tex. Apr. 6, 2016), ECF No. 45 (staying discovery where motion to dismiss for failure to state a claim raised "substantial arguments for dismissal of many, if not all, of Plaintiff's claims").

A stay is especially warranted in this action because the CFPB has obtained substantial discovery through its pre-litigation administrative investigation. The CFPB has already reviewed hundreds of documents provided by Active, obtained Active's interrogatory responses, interviewed three witnesses, and, one assumes, issued document preservation subpoenas to third parties. And the CFPB shows no signs of letting up. At the parties' recent Rule 26(f) conference, the CFPB indicated that it would continue to pursue burdensome discovery from Active regarding all matters relevant to its claims or Active's defenses, including: (1) the Advantage membership services and usage, chargeback, and cancellation rates; (2) Active's processes related to payments; (3) Active's offer design, communication with consumers, and marketing tests; (4) whether Active

engaged in violations knowingly or recklessly; (5) the appropriate amount of redress, civil money penalties, disgorgement, damages, and other monetary relief; (6) Active's revenue, expenses, and income; and (7) the credibility of any witness, including expert witnesses, to be deposed or to testify at trial. Gordon Declaration ¶ 7.

Permitting discovery to proceed in this manner would impose a unique hardship, as Active would be forced to once again provide the CFPB with discovery which the agency has no authority to demand. Now that Active raises substantial questions regarding the CFPB's authority to bring this action and its jurisdiction over the Advantage program in a formal motion, Active should not be compelled to continue submitting to the CFPB's discovery. By the same token, a stay would hardly impact the CFPB because it has already obtained substantial discovery from Active.

While the CFPB has received ample discovery prior to filing suit, a stay would not disrupt the flow of discovery in this case because no discovery has been exchanged in this matter since the CFPB filed its Original Complaint. This case had been stayed with the CFPB's consent between November 2022 and May 2024. No scheduling order has been imposed. Although the parties have held a Rule 26(f) conference, they have not exchanged initial disclosures or propounded discovery requests. The resumption of the stay that was initially imposed in November 2022 and only recently lifted does not substantially prejudice the CFPB or materially alter the course of these proceedings; it would in fact preserve the status quo ante.

Finally, a resumption of the stay would serve the same beneficial purpose as the stay imposed in 2022. That stay was entered with the CFPB's consent pending the resolution of *CFPB v. Community Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024), which considered the United States Court of Appeals for the Fifth Circuit's ruling that CFPB's statutory funding mechanism violated the Appropriations Clause and the constitutional separation of

powers. At the time, a stay was in the CFPB's best interest, as following binding Fifth Circuit precedent would have warranted the dismissal of this action. In its opinion reversing the Fifth Circuit, the Supreme Court started from the premise that moneys used by the Federal Reserve System to fund the CFPB are necessarily *surplus* funds from the Federal Reserve that would otherwise be remitted to the Treasury. *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. at 425. That reasoning seriously undermines the CFPB's authority to bring this action, given that the agency is currently being funded even though no surplus exists. (*See* ECF No. 28, at 22-24.) The CFPB is, therefore, pursuing this action using funds to which it is not entitled. If a stay was appropriate in 2022 to consider the propriety of the CFPB's funding mechanism in light of *Community Financial Services*, it is just as appropriate today now that Active has raised a related funding issue flowing from that same decision.

## IV. Conclusion

Considering all the above reasons, any one of which is sufficient to grant the Motion for Stay, Active petitions the Court to exercise its broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are resolved.

WHERFORE, Active request the Court to grant the Motion to Stay and enter an order staying all discovery in this case until the Motion to Dismiss is resolved.

Dated: June 21, 2024

Respectfully submitted,

/s/ *Clayton Bailey*

Clayton E. Bailey
Texas State Bar No. 00796151
cbailey@baileybrauer.com

**BAILEY BRAUER PLLC**
8350 N. Central Expressway, Ste 650
Dallas, Texas 75206
(214) 360-7424
Telephone: (214) 360-7433
Facsimile: (214) 360-7435

**VENABLE LLP**

Leonard L. Gordon (*pro hac vice*)
151 W 42nd Street
New York, New York 10036
(212) 307-5500
LLGordon@Venable.com

Benjamin E. Horowitz (*pro hac vice*)
600 Massachusetts Avenue NW
Washington, DC 20001
BEHorowitz@Venable.com

Elizabeth C. Rinehart (*pro hac vice*)
750 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 244-7400
ECRinehart@Venable.com

*Counsel for Defendant Active Network, LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that I complied with the meet and confer requirement in Local Rule CV-7(h) during the parties' Rule 26(f) conference held on June 14, 2024, during which the parties discussed the imposition of a stay of discovery pending the resolution of the Motion to Dismiss. Counsel for the CFPB has represented that the CFPB is opposed to the relief requested herein. Accordingly, this Motion to Stay Discovery is presented to the Court for resolution.

*/s/ Leonard L. Gordon*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, a copy of the foregoing was served on all parties through the Court's electronic filing system.

*/s/ Clayton Bailey*